UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| | | | |
|---|---|---|---|
| Case No. | 5:25-cv-02885-MRA-JC | Date | November 4, 2025 |
| Title | *Jonathan Alejandro Nororis Escobar v. Todd Lyons et al.* | | |

| | |
|---|---|
| Present: The Honorable | MONICA RAMIREZ ALMADANI, UNITED STATES DISTRICT JUDGE |

| Melissa H. Kunig | None Present |
|---|---|
| Deputy Clerk | Court Reporter |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| None Present | None Present |

**Proceedings:** **(IN CHAMBERS) ORDER GRANTING PETITIONER'S EX PARTE APPLICATION FOR TEMPORARY RESTRAINING ORDER [2]**

Before the Court is Petitioner's Ex Parte Application for Temporary Restraining Order ("TRO") pending adjudication of his Petition for Writ of Habeas Corpus (the "TRO Application"). ECF 2. Petitioner asks the Court "to order Respondents to release him from custody on his own recognizance, or in the alternative, to order a bond hearing on the merits before an immigration judge pursuant to 8 U.S.C. § 1226(a) within seven days of the issuance of the TRO." ECF 2 at 12. The Court read and considered the moving, opposing, and reply papers and deemed the matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78(b); L.R. 7-15. For the reasons stated herein, the Court **GRANTS** the TRO Application.

I.  **BACKGROUND**

On October 24, 2025, Petitioner Jonathan Alejandro Nororis Escobar ("Petitioner" or "Nororis Escobar") filed a Petition for Writ of Habeas Corpus against Respondents Todd M. Lyons, Acting Director of Immigration and Customs Enforcement ("ICE"), and Ernesto Santacruz, Jr., Acting Director of the Los Angeles ICE Field Office. ECF 1 (Pet.). Petitioner filed the instant TRO Application on the same day. ECF 2.

Petitioner is a citizen and national of Nicaragua. *Id.* at 12. Petitioner entered the United States on or about February 23, 2022. ECF 2-2 ¶ 2. He was encountered by Customs and Border Protection, paroled into the country, and required to report to the nearest ICE office within 60 days, which he did. ECF 2-3. He was also placed under Order of Release on Recognizance (Form I-220A) in accordance with 8 U.S.C. § 1226 and under ICE supervision through the Intensive Supervision Appearance Program ("ISAP"). ECF 2-4. Petitioner was later served with a Notice to Appear and re-paroled into the United States. ECF 2-3. Until his current detention, Petitioner had remained under ICE supervision, fully complied with all immigration

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-02885-MRA-JC | Date | November 4, 2025 |
|---|---|---|---|
| Title | *Jonathan Alejandro Nororis Escobar v. Todd Lyons et al.* | | |

reporting requirements, appeared punctually for all appointments, maintained communication with ICE, and demonstrated consistent good faith and reliability. ECF 2-2 ¶ 2; ECF 2-10. Plaintiff also had obtained work authorization and a Social Security number and had been continuously employed by Premier Ag. Products and Services. *Id.* ¶¶ 3, 6. Petitioner lived with his father and is engaged to a United States citizen. *Id.* ¶ 4. Petitioner has no criminal convictions. *Id.* ¶ 5.

On August 7, 2025, Petitioner was arrested on a Form I-200 Warrant for Arrest of Alien by ICE officers in Paso Robles, California. *Id.* ¶ 9. Two weeks later, Petitioner was transferred to the Adelanto ICE Processing Center, where he is currently being held. *Id.* ¶ 10.

On August 29, 2025, Petitioner filed a Motion for Bond before the Adelanto Immigration Court. *Id.* ¶ 11. The hearing took place on September 9, 2025, before an Immigration Judge ("IJ"). *Id.* ¶ 12. The IJ denied Petitioner's bond on the basis that the IJ lacked jurisdiction because Petitioner was subject to mandatory detention under 8 U.S.C. § 1225(b)(2). *Id.* ¶ 13. The IJ did not reach the merits of Petitioner's bond motion. *Id.*

Prior to Petitioner's arrest and detention, on July 8, 2025, DHS issued a notice titled "Interim Guidance Regarding Detention Authority for Applicants for Admission" (the "Interim Guidance").[1] *See* ECF 3-1 at 66. The Interim Guidance instructs ICE employees to consider anyone present in the United States who has not been admitted or who arrives in the United States as an "applicant for admission" under INA § 235(a)(1) subject to mandatory detention under INA § 235(b) and ineligible for a bond hearing before an immigration judge. *See id.*

Based on these allegations, on October 24, 2025, Petitioner filed a Petition for Writ of Habeas Corpus on the grounds that his detention violates the Immigration and Nationality Act, 8 U.S.C. § 1226; the Administrative Procedure Act, 5 U.S.C. § 706(2); and his Fifth Amendment right to due process. Pet. at 7.

In the instant TRO Application, Petitioner requests that the Court enjoin Respondents from continuing to detain him unless and until he is provided with a bond hearing on the merits before an IJ pursuant to 8 U.S.C. § 1226(a) within seven days of the issuance of the TRO. ECF 2 at 16. The government opposes. ECF 3. On October 30, 2025, the Court ordered that Petitioner may file a reply in support of the TRO Application and that the matter would then be taken under

---

[1] *See* ICE Memo: Interim Guidance Regarding Detention Authority for Applications for Admission, Am. Imm. L. Ass'n (July 8, 2025), https://www.aila.org/library/ice-memo-interim-guidance-regarding-detention-authority-for-applications-for-admission.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

| Case No. | 5:25-cv-02885-MRA-JC | Date | November 4, 2025 |
|---|---|---|---|
| Title | *Jonathan Alejandro Nororis Escobar v. Todd Lyons et al.* | | |

submission. ECF 8. Petitioner timely filed a Reply. ECF 9.

## II.   LEGAL STANDARD

The standard for issuing a TRO and preliminary injunction under Federal Rule of Civil Procedure 65 is the same. *Six v. Newsom*, 462 F. Supp. 3d 1060, 1067 (C.D. Cal. 2020) (citation omitted); *see also Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001) (noting that a TRO and preliminary injunction involve "substantially identical" analysis). Like a preliminary injunction, a TRO is "an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008).

Under *Winter*, a plaintiff seeking a TRO must establish four elements: "(1) a likelihood of success on the merits, (2) that the plaintiff will likely suffer irreparable harm in the absence of preliminary relief, (3) that the balance of equities tip in its favor, and (4) that the public interest favors an injunction." *Wells Fargo & Co. v. ABD Ins. & Fin. Servs., Inc.*, 758 F.3d 1069, 1071 (9th Cir. 2014) (citing *Winter*, 555 U.S. at 20). Courts in this circuit also employ "an alternative 'serious questions' standard, also known as the 'sliding scale' variant of the *Winter* standard," *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 635 (9th Cir. 2021) (cleaned up), in which the four *Winter* elements are "balanced, so that a stronger showing of one element may offset a weaker showing of another," *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011). Under this approach, a TRO may be warranted where there are "'serious questions going to the merits and a hardship balance . . . tips sharply toward the plaintiff," and so long as the other *Winter* factors are also met. *Id.* at 1132.

## III.   DISCUSSION

### A.   Jurisdiction

A federal district court is authorized to grant a writ of habeas corpus under 28 U.S.C. § 2241 where the petitioner is "in custody under or by color of the authority of the United States . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. §§ 2241(c)(1), (3). Notwithstanding this authority, the Government argues that the Court lacks habeas jurisdiction to review Petitioner's claims under several provisions of the INA. ECF 3 at 11–15.

#### 1.   *Section 1252(g)*

The Government first contends that 8 U.S.C. § 1252(g) "deprives courts of jurisdiction,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-02885-MRA-JC | Date | November 4, 2025 |
|---|---|---|---|
| Title | *Jonathan Alejandro Nororis Escobar v. Todd Lyons et al.* | | |

including habeas corpus jurisdiction, to review" Petitioner's habeas action because his claims "stem from his detention during removal proceedings," which in turn "arises from the decision to commence such proceedings against [him]." ECF 3 at 12.

Notwithstanding any other provision of law, Section 1252(g) provides that "no court shall have jurisdiction to hear any cause or claim by or on behalf of any [noncitizen] arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any [noncitizen]." 8 U.S.C. § 1252(g). The Supreme Court has instructed that § 1252(g) should be read narrowly to apply "only to three discrete actions that the Attorney General may take: her 'decision or action' to '*commence* proceedings, *adjudicate* cases, or *execute* removal orders.'" *Reno v. Am.-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 482 (1999). In doing so, the Court found it "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.*

Petitioner's habeas claims do not implicate any of the three discrete, discretionary actions of the Attorney General under § 1252(g). Petitioner challenges whether he is subject to mandatory detention during the pendency of his removal proceedings, not ICE's discretionary authority to decide "when," "where," and "whether" to detain him and commence removal proceedings. ECF 3 at 10. "[T]he extent of the Government's detention authority is not a matter of 'discretionary judgment,' 'action,' or 'decision.'" *Jennings v. Rodriguez*, 583 U.S. 281, 296 (2018) (holding that constitutional challenge to prolonged detention without bond-hearing requirement is not barred by 8 U.S.C. § 1226(e), which bars judicial review of discretionary actions or decisions by the Attorney General regarding the detention of a noncitizen under that section or the denial of bond or parole). As such, "challenge[s] to the statutory framework that permits [the noncitizen]'s detention without bail," *id.* (internal quotation marks omitted), and "questions of law" raised in the application or interpretation of detention statutes, *Leonardo v. Crawford*, 646 F.3d 1157, 1160 (9th Cir. 2011), and "claims that the discretionary process itself was constitutionally flawed are 'cognizable in federal court on habeas because they fit comfortably within the scope of § 2241,'" *Singh v. Holder*, 638 F.3d 1196, 1202 (9th Cir. 2011) (quoting *Gutierrez-Chavez v. INS*, 298 F.3d 824, 829 (9th Cir. 2002)). The Government's reading of § 1252(g) is impermissibly broad and inconsistent with Supreme Court precedent, which has long stressed that § 1252(g) does not "sweep in any claim that can technically be said to 'arise from' the three listed actions of the Attorney General." *Jennings*, 583 U.S. at 294 (citing *Reno*, 525 U.S. at 482–83).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-02885-MRA-JC | Date | November 4, 2025 |
|---|---|---|---|
| Title | *Jonathan Alejandro Nororis Escobar v. Todd Lyons et al.* | | |

### 2.    *Sections 1252(a)(5) and (b)(9)*

The government also argues that 8 U.S.C. §§ 1252(a)(5) and (b)(9) bar judicial review of Petitioner's claims because he is "challenging the basis upon which he is detained" and the exclusive means of judicial review of such claims is a petition for review to a court of appeals. ECF 3 at 13–15 (quoting *Jennings*, 583 U.S. at 319 (Thomas, J., concurring)).

Section 1252(b)(9) provides that with respect to review of an order of removal, "[j]udicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien . . . shall be available only in judicial review of a final order." 8 U.S.C. § 1252(b)(9).  Section 1252(a)(5) clarifies that "a petition for review filed with an appropriate court of appeals in accordance with this section shall be the sole and exclusive means for judicial review of an order of removal entered or issued." *Id.* § 1252(a)(5).  Respondents cite the Supreme Court's decision in *Reno*, which referred to § 1252(b)(9) as an "unmistakable 'zipper' clause" that "channels judicial review of all [decisions and actions arising from deportation proceedings]" to a court of appeals.  *Reno*, 525 U.S. at 483.

It is unmistakably clear, however, that sections 1252(a)(5) and (b)(9) were intended to "channel judicial review over *final orders of removal* to the courts of appeals," not "foreclose *all* judicial review of agency actions" touching on deportation proceedings writ large. *J.E.F.M. v. Lynch*, 837 F.3d 1026, 1031 (9th Cir. 2016) (emphasis added in part).  The *Jennings* plurality explicitly rejected the "expansive" interpretation of § 1252(b)(9) posited by the Government here, cautioning that it "would lead to staggering results." 583 U.S. at 293.  The Court explained that practically any question of fact or law related to immigration detention technically "aris[es] from" actions taken to remove a noncitizen "in the sense that the [noncitizen's] injuries would never have occurred if they had not been placed in detention." *Id.*  But "cramming judicial review of those questions into the review of final removal orders would be absurd." *Id.* at 293.  The Court reasoned:

> Interpreting "arising from" in this extreme way would . . . make claims of [unlawful] detention effectively unreviewable.  By the time a final order of removal was eventually entered, the allegedly [unlawful] detention would have already taken place.  And of course, it is possible that no such order would ever be entered in a particular case, depriving that detainee of any meaningful chance for judicial review.

*Id.*

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-02885-MRA-JC | Date | November 4, 2025 |
|---|---|---|---|
| Title | *Jonathan Alejandro Nororis Escobar v. Todd Lyons et al.* | | |

This logic squarely applies in the context of this case, where Petitioner challenges the legality of his continued detention under section 1225(b) without a bond hearing, *not* review of a final order of removal. Petitioner is not "challenging the decision to detain [him] in the first place or to seek removal," as the government contends, or "any part of the process by which [his] removability will be determined." *Jennings*, 583 U.S. at 294. Yet under the government's interpretation of § 1252(b)(9), Petitioner would have no means of seeking judicial review of his challenge to mandatory detention until a final order of removal is entered and Petitioner has filed a petition for review.

As for the language the government cites from Justice Thomas' concurrence—that "detention *is* an 'action taken . . . to remove' an alien," ECF 9 at 16 (quoting *Jennings*, 583 U.S. at 319 (Thomas, J., concurring))—the plurality explicitly declined to follow this reasoning because "[t]he question is not whether *detention* is an action taken to remove an alien but whether *the legal questions* in this case arise from such an action." *See Jennings*, 583 U.S. at 294 n.3.

Accordingly, the Court finds that it has habeas jurisdiction over Petitioner's claims and that no provision of § 1252 deprives the Court of this jurisdiction.

    **B.**    ***Winter* Factors**

        **1.**    ***Likelihood of Success on the Merits***

"Likelihood of success on the merits is the most important factor," *California v. Azar*, 911 F.3d 558, 575 (9th Cir. 2018) (citation and internal quotation marks omitted), especially for constitutional claims, *see Junior Sports Mags. Inc. v. Bonta*, 80 F.4th 1109, 1115 (9th Cir. 2023). Petitioner argues that his ongoing mandatory detention under § 1225(b) and the denial of a bond hearing based on the Interim Guidance violates the Due Process Clause of the Fifth Amendment and the INA, and that he instead should be subject to Section 1226(b)'s discretionary detention scheme. ECF 2 at 18; Pet. at 7. Respondents maintain that Petitioner is lawfully detained under Section 1225(b) because he is properly classified as an "applicant for admission." ECF 3 at 17. The Court finds that Petitioner is likely to succeed on or at least has raised "serious questions" going to the merits of his claims that he is unlawfully detained under Section 1225(b) and should instead be subject to Section 1226(a)'s discretionary detention scheme.

The legal question presented here is primarily one of statutory interpretation. As the Ninth Circuit has observed, "divining [the] meaning . . . of [t]he complex provisions of the INA . . . is ordinarily not for the faint of heart." *Torres v. Barr*, 976 F.3d 918, 923 (9th Cir. 2020) (en banc). But even when a statute is ambiguous or internally contradictory, courts must "use every tool at

Case 5:25-cv-02885-MRA-JC   Document 10   Filed 11/04/25   Page 7 of 12   Page ID #:296

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-02885-MRA-JC | Date | November 4, 2025 |
|---|---|---|---|
| Title | *Jonathan Alejandro Nororis Escobar v. Todd Lyons et al.* | | |

their disposal to determine the best reading of the statute and resolve the ambiguity." *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024). The Court's analysis "begins with the language of the statute." *Esquivel-Quintana v. Sessions*, 581 U.S. 385, 391 (2022) (quoting *Leocal v. Ashcroft*, 543 U.S. 1, 8 (2004)).

The Supreme Court has observed that § 1226 "authorizes the Government to detain certain aliens already in the country pending the outcome of removal proceedings[.]" *Jennings*, 583 U.S. at 289. Specifically, the statute provides that "on a warrant issued by the Attorney General, a[] [noncitizen] may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). The Attorney General may continue to detain the arrested noncitizen, release him on bond, or release him on conditional parole. *Id.* Individuals detained under § 1226(a) are entitled to receive bond hearings at the outset of detention. 8 C.F.R. § 236.1(d)(1); *see also Jennings*, 583 U.S. at 306. Section 1226(a) and its implementing regulations further "provide extensive procedural protections that are unavailable under other detention provisions, including several layers of review of the agency's initial custody determination." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1202 (9th Cir. 2022). Section 1226(c) then "carves out a statutory category of [noncitizens] who may *not* be released under § 1226(a)." *Jennings*, 583 U.S. at 289. The subsection specifically mandates detention for a noncitizen "who falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Id.* As one district court recently observed, "Section 1226(c) requires detention for a noncitizen who is both inadmissible because he is 'present in the United States without being admitted or paroled' *and* 'is charged with, is arrested for, is convicted of, admits having committed, or admits committing acts which constitute the essential elements' of certain crimes." *Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1256 (W.D. Wash. 2025). Thus, "[a] plain reading of [section 1226(c)] implies that the default discretionary bond procedures in Section 1226(a) apply to a noncitizen who . . . is present without being admitted or paroled but *has not been* implicated in any crimes as set forth in Section 1226(c)." *Id.*

On the other hand, Section 1225 "applies primarily to [noncitizens] seeking entry into the United States." *Jennings*, 583 U.S. at 297. Under 8 U.S.C. § 1225(a), a noncitizen who "arrives in the United States" or "is present" in the United States but "has not been admitted" is treated as "an applicant for admission." 8 U.S.C. § 1225(a)(1). Applicants for admission must "be inspected by immigration officers" to ensure that they can be admitted into the country consistent with immigration law. *Id.* § 1225(a)(3). "That process of decision generally begins at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." *Jennings*, 583 U.S. at 287. "[A]pplicants for admission fall into one of two categories, those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Id.*; ECF 3 at 16. Section 1225(b)(1) "applies to [noncitizens] initially

Case 5:25-cv-02885-MRA-JC   Document 10   Filed 11/04/25   Page 8 of 12   Page ID #:297

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-02885-MRA-JC | Date | November 4, 2025 |
|---|---|---|---|
| Title | *Jonathan Alejandro Nororis Escobar v. Todd Lyons et al.* | | |

determined to be inadmissible due to fraud, misrepresentation, or lack of valid documentation," who are "normally ordered removed 'without further hearing or review' pursuant to an expedited removal process." *Jennings*, 583 U.S. at 287 (quoting 8 U.S.C. § 1225(b)(1)(A)(i)). Section 1225(b)(2), the "broader" of the two, "serves as a catchall provision that applies to all applicants for admission not covered by § 1225(b)(1)[.]" *Id.* Section 1225(b)(2) mandates detention "for a [removal] proceeding" if "the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted" into the country. 8 U.S.C. § 1225(b)(2)(A).

Thus, as a matter of statutory construction, the Court finds that Petitioner is likely to succeed in proving that the mandatory detention provision under § 1225(b) applies only to arriving noncitizens who are deemed inadmissible upon inspection, not noncitizens who have entered the country and are arrested following internal enforcement operations. *See Torres v. Barr*, 976 F.3d 918, 926 (9th Cir. 2020) (interpreting the phrase "as an applicant for admission" in the context of the INA to include "a distinct point in time").

Notwithstanding the clear textual separation between sections 1225 and 1226, the government takes the position—as reflected in the Interim Guidance—that § 1225's mandatory detention authority applies to all noncitizens who have not been admitted, including those, like Petitioner, who entered the United States several years ago, has been under ICE supervision, and has established presence in the United States. As other district courts have recently held, this interpretation is not supported by the text, legislative history, or the agency's longstanding practice. *See, e.g.*, *Rodriguez*, 779 F. Supp. 3d at 1258-61; *Chavez v. Kaiser*, No. 25-CV-06984-LB, 2025 WL 2909526, at *5 (N.D. Cal. Oct. 9, 2025) ("For decades, DHS applied § 1226(a) to [noncitizens like the petitioner who entered without inspection but were apprehended inland], acknowledging they are not 'arriving aliens' at ports of entry."); *Gomes v. Hyde*, No. 1:25-CV-11571-JEK, 2025 WL 1869299, at *5–7 (D. Mass. July 7, 2025) ("[T]he plain text of Sections 1225 and 1226, together with the structure of the larger statutory scheme, indicates that Section 1225(b)(2) does not apply to noncitizens who are arrested on a warrant issued by the Attorney General while residing in the United States."); *Lopez Benitez v. Francis*, No. 25 CIV. 5937 (DEH), 2025 WL 2371588, at *5 (S.D.N.Y. Aug. 13, 2025) (holding 1225(b)(2) "clearly" not applicable to noncitizens who have resided in the country for years).

"[O]ne of the most basic interpretive canons, that "[a] statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant[.]" *Corley v. United States*, 556 U.S. 303, 314 (2009) (citation omitted). Yet the government's interpretation "would render superfluous provisions of Section 1226 that apply to certain categories of inadmissible noncitizens." *Rodriguez*, 779 F. Supp. 3d at 1258. This

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-02885-MRA-JC | Date | November 4, 2025 |
|---|---|---|---|
| Title | *Jonathan Alejandro Nororis Escobar v. Todd Lyons et al.* | | |

notably includes Section 1226(c)(1)(E)—added to Section 1226 in 2025 by the Laken Riley Act—which makes a noncitizen subject to mandatory detention if he (i) is inadmissible under 8 U.S.C. §§ 1182(a)(6)(A), (6)(C), or (7) (the "inadmissibility criterion"); *"and"* (ii) is charged with, arrested for, convicted of, or admits to committing certain crimes (the "criminal conduct criterion"). 8 U.S.C. § 1226(c)(1)(E) (emphasis added). The government's interpretation "would render Section 1226(c)(1)(E)'s criminal conduct criterion superfluous for noncitizens who are inadmissible on two of the three grounds specified in the inadmissibility criterion." *Gomes*, 2025 WL 1869299, at *7; *see also Rodriguez*, 779 F. Supp. 3d at 1259. That Sections 1225 and 1226 apply to separate sets of noncitizens means that there is no "irreconcilable conflict" between the two provisions, as the government implies. *See* ECF 8 at 16.

The government has not pointed to a single district court that has agreed with its construction of § 1225(b)(2). Instead, the government points to a recent BIA decision agreeing with its interpretation. ECF 8 at 16–17 (citing *Matter of Jonathan Javier Yajure Hurtado*, 29I & N Dec. 216 (BIA 2025)). In that decision, the BIA held that § 1225(b)(2) prescribes mandatory detention for all inadmissible noncitizens living in the United States. But "the Court has no obligation to defer to the BIA's view, particularly when that view has not 'remained consistent over time.'" *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC (EMC), 2025 WL 2637503, at *9 (N.D. Cal. Sept. 12, 2025) (quoting *Loper*, 603 U.S. at 386); *see also Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944) (finding that the "weight of such a judgment in a particular case will depend upon the thoroughness evident in its consideration, the validity of its reasoning, its consistency with earlier and later pronouncements, and all those factors which give it power to persuade, if lacking power to control"). "Prior to its September 5 decision, the BIA issued three non-precedential decisions taking the *opposite* position" to the one it takes now. *Salcedo Aceros*, 2025 WL 2637503, at *9 (citing *Martinez v. Hyde*, No. CV 25-11613-BEM, 2025 WL 2084238, at *8 (D. Mass. July 24, 2025)). Thus, the BIA decision is entitled to little deference. Moreover, district courts have uniformly "rejected similar reinterpretations post-*Yajure Hurtado*." *Chavez*, 2025 WL 2909526, at *5 (collecting cases). "These cases, while not binding, persuasively reject the government's argument, based on statutory history and due-process concerns, that unlawful entrants should not fare better than applicants at ports of entry because Congress (and case law) has distinguished those categories of persons." *Id.* (citing *Jennings*, 583 U.S. at 287–88).

For the foregoing reasons, Petitioner has shown a likelihood of success on the merits.

   2.   ***Irreparable Harm***

Petitioner argues that his continued unlawful detention without a bond hearing is itself an immediate and irreparable injury. ECF 3 at 30. The government does not dispute this *Winter*

Case 5:25-cv-02885-MRA-JC   Document 10   Filed 11/04/25   Page 10 of 12   Page ID #:299

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-02885-MRA-JC | Date | November 4, 2025 |
|---|---|---|---|
| Title | *Jonathan Alejandro Nororis Escobar v. Todd Lyons et al.* | | |

factor. "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)). "Deprivation of physical liberty by detention constitutes irreparable harm." *Arevalo v. Hennessy*, 882 F.3d 763, 767 (9th Cir. 2018) (citing *Hernandez*, 872 F.3d at 994). Indeed, Petitioner "suffers potentially irreparable harm every day that he remains in custody without a hearing, which could ultimately result in his release from detention." *Cortez v. Sessions*, 318 F. Supp. 3d 1134, 1139 (N.D. Cal. 2018) (citation omitted).

The Court finds that Petitioner's allegedly unlawful detention without a bond hearing before an IJ inherently causes irreparable harm.

### 3. Balance of Equities and Public Interest

The last two *Winter* factors merge when the Government is the opposing party. *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)). Petitioner argues that the balance of equities and the public interest weigh in favor of granting the TRO because it would be neither equitable nor in the public interest to allow the government to continue to violate federal law. ECF 2 at 32. The government responds that it has "a compelling interest in the steady enforcement of its immigration laws." ECF 3 at 20.

The Ninth Circuit has recognized that "neither equity nor the public's interest are furthered by allowing violations of federal law to continue." *Galvez v. Jaddou*, 52 F.4th 821, 832 (9th Cir. 2022) (holding that the district court did not abuse its discretion that the balance of hardships weighed in favor of plaintiffs who credibly alleged that the Government was violating the INA). That the government has an interest in enforcing its immigration laws is of no moment because "our system does not permit agencies to act unlawfully even in pursuit of desirable ends." *Ala. Ass'n of Realtors v. Dep't of Health & Hum. Servs.*, 594 U.S. 758, 766 (2021) (citing *Youngstown Sheet & Tube Co. v. Sawyer*, 343 U.S. 579, 582 (1952)); *see also Am. Fed'n of Gov't Emps., AFL-CIO v. Trump*, No. 25-CV-03698-SI, 2025 WL 1482511, at *27 (N.D. Cal. May 22, 2025) (finding that injunctive relief would serve the public interest because "[t]here is generally no public interest in the perpetuation of unlawful agency actions" (quoting *League of Women Voters of United States v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016)). Thus, the balance of equities and the public interest tip sharply in favor of issuing the TRO.

### C. Scope of Relief

The Supreme Court "has repeatedly held that the basis for injunctive relief in the federal courts has always been irreparable injury and the inadequacy of legal remedies." *Weinberger v.*

Case 5:25-cv-02885-MRA-JC    Document 10    Filed 11/04/25    Page 11 of 12    Page ID #:300

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-02885-MRA-JC | Date | November 4, 2025 |
|---|---|---|---|
| Title | *Jonathan Alejandro Nororis Escobar v. Todd Lyons et al.* | | |

*Romero-Barcelo*, 456 U.S. 305, 312 (1982) (collecting cases). Injunctive relief "should be 'no more burdensome to the defendant than necessary to provide complete relief to the plaintiffs before the court.'" *E. Bay Sanctuary Covenant v. Biden*, 993 F.3d 640, 680 (9th Cir. 2021) (quoting *U. of Cal. v. U.S. Dep't of Homeland Sec.*, 908 F.3d 476, 511 (9th Cir. 2018)). "Where relief can be structured on an individual basis, it must be narrowly tailored to remedy the specific harm shown." *Id.* (citation omitted).

In the TRO Application, Petitioner primarily seeks a TRO enjoining Respondents from continuing to detain him unless and until he is provided a bond hearing on the merits before an Immigration Judge pursuant to 8 U.S.C. § 1226(a) within seven days of the issuance of the TRO. ECF 2 at 16. The Court agrees that the relief is narrowly tailored to remedy the specific harm shown.

### D. Bond

Rule 65(c) provides that a court "may issue a preliminary injunction or a temporary restraining order only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c). "Despite the seemingly mandatory language, 'Rule 65(c) invests the district court with discretion as to the amount of security required, *if any*.'" *Johnson v. Couturier*, 572 F.3d 1067, 1086 (9th Cir. 2009) (quoting *Jorgensen v. Cassiday*, 320 F.3d 906, 919 (9th Cir. 2003)). In particular, "[t]he district court may dispense with the filing of a bond when it concludes there is no realistic likelihood of harm to the defendant from enjoining his or her conduct." *Id.* (citation omitted). That is, the mandatory language of Rule 65(c) does not "absolve[] the party affected by the injunction from its obligation of presenting evidence that a bond is needed, so that the district court is afforded an opportunity to exercise its discretion in setting the amount of the bond." *Conn. Gen. Life Ins. Co. v. New Images of Beverly Hills*, 321 F.3d 878, 883 (9th Cir. 2003). Here, Respondents have not demonstrated any likelihood of harm if the Court grants the requested TRO or presented any evidence demonstrating that a bond is needed. The Court therefore exercises its discretion and waives the bond requirement under Rule 65(c).

### IV. CONCLUSION

For the foregoing reasons, the TRO Application is **GRANTED**. The Court **ORDERS** as follows:

1. Respondents are enjoined from continuing to detain Petitioner unless they provide him with an individualized bond hearing before an immigration judge under 8 U.S.C. § 1226(a)

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**

| Case No. | 5:25-cv-02885-MRA-JC | Date | November 4, 2025 |
|---|---|---|---|
| Title | *Jonathan Alejandro Nororis Escobar v. Todd Lyons et al.* | | |

within seven (7) days of the date of this Order. To effectuate this relief, Respondents shall not transfer Petitioner's custody out of the Central District of California.

2. Respondents shall record the hearing provided in connection with this Order and lodge a transcript of those proceedings in this action.

3. This TRO shall take immediate effect on **November 4, 2025**, and expires at 5:00 p.m. on **November 18, 2025**. The TRO may be extended for good cause or upon Respondents' consent.

4. Respondents are **ORDERED TO SHOW CAUSE** on **November 20, 2025, at 10:30 a.m.**, why a preliminary injunction should not issue. *See* L.R. 65-1. Respondents must file any written response to the Order to Show Cause no later than **November 11, 2025**. Petitioner may file a reply no later than **November 17, 2025**.

**IT IS SO ORDERED.**

\_\_\_\_ : \_\_\_\_

Initials of Deputy Clerk    mku